Filed 6/13/16  P. v. Gonzalez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ALAN GONZALEZ,<br><br>     Defendant and Appellant. | B261654<br><br>(Los Angeles County<br>Super. Ct. No. BA382545) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

John Lanahan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Alan Gonzalez appeals his convictions of first degree murder with special circumstances (Pen. Code, §§ 187, 190.2, subd. (a)(21)) and possession of a firearm by a felon (former Pen. Code, § 12021, subd. (a)) on the ground that the court abused its discretion by ordering him restrained with a "stealth belt." We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

As the sole issue on appeal concerns the use of restraints at trial, a recitation of the factual background of the case is unnecessary. During jury selection, the trial court learned that on the previous day Gonzalez had made a threat against the assistant district attorney (referred to as "the D.A.") while at the North County Correctional Facility. The court asked the bailiff to get a report from the facility about what had occurred so that it could determine whether a hearing on restraints was warranted, and to bring an additional bailiff to the courtroom in the meantime. The court cautioned Gonzalez to behave appropriately, and Gonzalez responded, "I'm not going to do nothing to him. I never—I never had a problem with him or nothing. I never disrupted your other court. Nothing like that. I wouldn't even say nothing like that. I don't have no problem with him. If he has to do his job, he has to do a job. That's understandable. I'm not going to sit here and try to attack him for any reason. I'm letting you know right now in front of him, my intentions are not to do anything to him."

Later that day, the court conducted a hearing on the alleged threat outside the jury's presence. Deputy Anthony Sotos testified that the day before, Gonzalez had expressed the desire to be held downtown rather than at the North County Correctional Facility. Gonzalez said it was easy to stab people through the bars downtown, but he could not stab anyone at the North County Correctional Facility. He told Sotos, "You don't want me here anymore. I've already got a life sentence, and they're trying to give me another." Then he said, "I'm going to beat the shit out of the D.A. on my case in the courtroom the first chance I get."

Sotos testified that Gonzalez had not been violent or aggressive to him personally, but that he had "said things recently that indicated to [Sotos] that [he] needed to take [the

statement about the prosecutor] seriously." Gonzalez was moody and had misbehaved before. A few weeks ago he had "occupied" the day room in the correctional facility dorm for four or five hours, refusing to go back to his cell. Gonzalez had also recently said, "I don't give a fuck. I already got a life sentence." Sotos testified, "[T]o me, I just add that up in my mind, and when I hear a threat on top of someone's mindset right out of their mouth, saying that they don't care, I worry about the D.A.'s safety."

The court said it was considering restraints that would be invisible to the jury and that would attach to one of Gonzalez's legs. Defense counsel objected that restraints would "put[] a lot of pressure on this defendant, because . . . he's not getting enough rest, and then to restrict his movement—." The court asked if there was a reason that Gonzalez should be moving in the courtroom. Counsel responded that he had a pencil and paper and was "trying to follow things here," and the court assured him that Gonzalez's hand would not be restrained. Defense counsel argued, "All of us are familiar with the effects of not getting enough sleep[,] and then being restrained. I think the average, reasonable person would conclude that it's difficult to maintain a demeanor and attitude that you would be positive when you're defending yourself in a case because of these consequences." He noted that the jury was watching Gonzalez and argued that there was nothing "in addition to what this officer has to say that would suggest that this defendant is going to be any kind of a problem . . . ."

The court advised the parties that it would take the evening to consider the record and the law on restraints. The court stated that it was not contemplating a stun belt on the facts presented, but it would consider whether the record supported ordering restraints that would make it more difficult for Gonzalez to move.

The following morning, the court told the parties that "the record in this case does show a manifest need [for restraints] because we have a direct threat made against the D.A. Specifically, what the defendant said is, 'I got one life sentence. They're trying to give me another. I'm going to beat the shit out of the D.A. on my case in the courtroom the first chance I get.' No matter how you slice that, that's a threat." The court observed that it had conducted a hearing, that it found Sotos a credible witness, and that threats of

3

violence are sufficient to permit a court to enhance security measures in the courtroom. The court noted Gonzalez's previous conviction for violent conduct, although it also observed that he had not been unruly in these proceedings or when he appeared before the court in the past. The court acknowledged that Gonzalez had stated in court that he had no intention of harming the prosecutor, and expressed that it would be frustrating to be held so far from downtown during trial.

The court called it "a close call," but that given that "a threat was made against the D.A., and that there is only 12 to 15 feet separating the D.A. and the defendant," the court "simply [was] not confident or comfortable with the fact that a single deputy is standing between the defendant and the D.A." The court said, "I don't want to risk a potential attack on the D.A." The court selected what it termed "a middle procedure" of ordering that a "stealth belt" be used—a device that would not be visible to the jury but would secure Gonzalez to a chair. The court ruled that the stealth belt was "the least restrictive" measure to respond effectively to the threat posed by Gonzalez. Also, the court ruled that Gonzalez would not be restrained while he testified to ensure that "there would be no psychological impact on his ability to testify." Finally, the court told Gonzalez, "It's not personal, but I can't take a chance. I actually am of the belief that you really don't plan to do anything to the D.A., but you threatened to do it."

## DISCUSSION

Gonzalez argues on appeal that the trial court abused its discretion when it ordered the stealth belt because there was no showing of a manifest need to restrain him. "In general, the 'court has broad power to maintain courtroom security and orderly proceedings' [citation], and its decisions on these matters are reviewed for abuse of discretion. [Citation.] However, the court's discretion to impose physical restraints is constrained by constitutional principles. Under California law, 'a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints.' [Citation.]" (*People v. Lomax* (2010) 49 Cal.4th 530, 558-559.) "'In deciding whether restraints are justified,

4

the trial court may "take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial." [Citation.] These factors include evidence establishing that a defendant poses a safety risk, a flight risk, or is likely to disrupt the proceedings or otherwise engage in nonconforming behavior.' [Citation.] Although the court need not hold a formal hearing before imposing restraints, 'the record must show the court based its determination on facts, not rumor and innuendo.' [Citation.] The imposition of physical restraints without evidence of violence, a threat of violence, or other nonconforming conduct is an abuse of discretion. [Citation.]" (*Id.* at p. 559.)

The trial court did not abuse its discretion in ordering that Gonzalez be restrained by the stealth belt. The court held a hearing and took testimony, and spoke extensively with counsel before imposing the restraints, during which conversation it demonstrated that it understood both the law applicable to restraint orders and the larger issues that restraints pose. The court took time to consider its decision, and when it did so, it made a thorough ruling that identified the facts weighing both in favor of and against restraints. Ultimately, the court concluded that Sotos was credible and that Gonzalez had in fact threatened to attack the prosecutor. Gonzalez's threat to "beat the shit out of the D.A.," when considered in conjunction with his prior conviction for a violent crime and his statements that he did not care and that he was already serving a life sentence, demonstrated the requisite manifest need for restraints and justified the use of a nonvisible restraint such as the stealth belt.

Gonzales argues, however, that the court did not consider his words "a real threat" because Gonzalez had not been unruly before and because the statement was made in frustration over the terms of his confinement. While the court did note that Gonzalez had not been violent in the courtroom in this proceeding or in a prior trial, and it expressed its view that Gonzalez's threat was motivated by frustration at being housed far away from the courthouse, the court also found that he was a previously violent offender already serving a life sentence, and that even if Gonzalez made the threat out of frustration, the record established that he had nonetheless made an actual threat of physical violence that

5

could not be ignored.  The court, moreover, selected the least obtrusive and least restrictive option that would be effective to respond to the threat posed by the defendant, a belt that would restrict Gonzalez's movement but would not be visible to the jury or have the capability of delivering an electric shock.  (See *People v. Mar* (2002) 28 Cal.4th 1201, 1226 [when physical restraints are appropriate, court "must impose the least obtrusive or restrictive restraint that effectively will serve the specified security purposes"].)  The court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.


ZELON, Acting P. J.

We concur:


SEGAL, J.


BLUMENFELD, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.